Brian J. Perkins (SBN 315870)
PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 766-3544
Facsimile: (415)840-9435
Email: bperkins@peifferwolf.com

Annie McAdams, *pro hac vice forthcoming*
ANNIE MCADAMS PC
2900 North Loop West, Suite 1130
Houston, Texas 77092
Telephone: (713) 785-6262
annie@mcadamspc.com

Bryan O. Blevins, *pro hac vice forthcoming*
PROVOST UMPHREY LAW FIRM
350 Pine Street, Ste., 1100
Beaumont, TX 77701
Phone: (409) 835-6000
bblevins@pulf.com

David E. Harris, *pro hac vice forthcoming*
Preston Burns, *pro hac vice forthcoming*
SICO HOELSCHER HARRIS, LLP
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 653-3300
dharris@shhlaw.com
pburns@shhlaw.com

Attorneys for Plaintiff, Jane Doe, (K.R.D.)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE (K.R.D.),<br>　　Plaintiff,<br><br>v.<br><br>HILTON RESORTS CORPORATION;<br>HILTON MANAGEMENT LLC;<br>HILTON FRANCHISE HOLDING LLC;<br>HILTON HOTELS CORPORATION;<br>and SKYLINE AVATAR HOUSE, LP,<br>　　Defendants. | )<br>)<br>)<br>)　CASE NO.:<br>)<br>)　**PLAINTIFF'S ORIGINAL**<br>)　**COMPLAINT**<br>)<br>)<br>)<br>)<br>)　DEMAND FOR JURY TRIAL |

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
San Francisco, CA 94111
415.766.3544 phone • 415.840-9435 fax

TO THE HONORABLE JUDGE OF SAID COURT:

Jane Doe (K.R.D.), Plaintiff in the above-styled and numbered cause, files this Original Complaint against Hilton Resorts Corporation; Hilton Management LLC; HILTON FRANCHISE HOLDING LLC; and SKYLINE AVATAR HOUSE, LP as Defendants, and would respectfully show the Court and jury as follows:

**SUMMARY**

1. Jane Doe (K.R.D.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured at Avatar Hotel; owned, operated, maintained, and controlled by Defendants and their agents and employees.

2. Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[1] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

3. Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

4. Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

5. In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

6.     As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including victims like Jane Doe (K.R.D.) with minimal risk of detection or interruption. Defendants continued supporting traffickers, including Jane Doe (K.R.D.)'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking in these hotels. Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

## **PARTIES**

7.     Plaintiff Jane Doe (K.R.D.) is a resident of Nevada.

8.     Jane Doe (K.R.D.) is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was harbored, transported, or provided for the purpose of causing her, through force, fraud or coercion, to commit a commercial sex act.

9.     The trafficking of Jane Doe (K.R.D.) occurred in or affected interstate commerce.

10.     Given the nature of the allegations in this lawsuit, there is a collective and compelling interest in not publicly revealing the identity of Jane Doe (K.R.D.).[2]

11.     Defendant Hilton Resorts Corporation is a Delaware Corporation and is registered to do business in the State of New York. It can be served by its registered agent, Corporation Service Company, 80 State Street, Albany, NY 12207. Hilton Franchise Holding LLC is a limited liability company incorporated under the laws of the state of Delaware with its principal place of business at 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22102.

12.     Defendant Hilton Hotels Corporation is a North Carolina corporation with its principal place of business in North Carolina. It can be served by its registered agent: Domi Valhalla, 135 Hawkeye Drive 7B, Red Springs, NC 28377. They collectively will be referred to as "Hilton" or "Franchisor Defendants." Upon information and belief, at all relevant times they owned, operated, controlled, and/or managed the Avatar Hotel at 4200 Great American Parkway, Santa Clara, CA 95054.

---

[2] Plaintiff will file a motion for protective order, if requested by the Court, to proceed under a pseudonym.

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

13.    Defendant Hilton Resorts Corporation is a Delaware corporation with its principal place of business in Virginia.  Hilton Resorts Corporation may be served through its registered agent The Prentice-Hall Corporation System, Inc. at 251 Little Falls Drive, Wilmington, Delaware 19808.

14.    Defendant Hilton Management LLC is a Delaware Limited Liability Company with its principal place of business in Virginia.  Hilton Management LLC may be served through its registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

15.    Defendant Hilton Franchise Holding LLC is a Delaware Limited Liability Company with its principal place of business in Virginia.  Hilton Franchise Holding LLC may be served through its registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

16.    Defendants Hilton Resorts Corporation, Hilton Management LLC, and Hilton Franchise Holding LLC will collectively be referred to as "Hilton" or "Franchisor Defendants." Upon information and belief, they owned, operated, controlled, and/or managed the Tapestry Collection brand of hotels, which includes following Franchisee location:

  a.    Skyline Avatar House, LP d/b/a Avatar Hotel, located at 4200 Great American Parkway, Santa Clara, California 95054.

17.    Skyline Avatar House, LP is a for-profit limited partnership with its principal place of business in California. Skyline Avatar House, LP may be served through its registered agent D. Scott Ruegg at 221 Pine Street, Fourth Floor, San Francisco, CA 94104. At all relevant times, it owned, operated, controlled, and/or managed the Avatar Hotel located at 4200 Great American Parkway, Santa Clara, California 95054. Skyline Avatar House, LP will be referred to as "Avatar" or a "Franchisee Defendant."

## JURISDICTION AND VENUE

18.    **Jurisdiction:** This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

19.     This Court has personal jurisdiction over all Defendants.  Each Defendant is, and at all relevant times herein was, a citizen of and/or authorized to conduct business in the State of California and/or conducted such business within the State of California, including the Northern District of California and including the actions, dealings, and/or omissions that caused or contributed to the harm giving rise to this action.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

21.     **Divisional Assignment:** Pursuant to Local Rule 3-5(b), this case is properly assigned to the San Jose Division, as a substantial part of the events or omissions giving rise to this action occurred in Santa Clara County.

## STATEMENT OF FACTS

I.     **Jane Doe (K.R.D.) was a Victim of Unlawful Sex Trafficking at a Hotel Owned, Operated, Managed and Controlled by Defendants.**

22.     Jane Doe (K.R.D.) was trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts.  Jane Doe (K.R.D.) was trafficked continuously from approximately April 2014 through December 2016, including specifically from May 1, 2014 through December 31, 2016 at the Avatar Hotel located at 4200 Great America Pkwy, Santa Clara, California 95054.

23.     Jane Doe (K.R.D.)'s trafficker used force and threats to force and coerce her into sex trafficking including beating her and threatening her child.

24.     Jane Doe (K.R.D.)'s sexual exploitation repeatedly occurred in rooms of the Avatar Hotel and was facilitated by Hilton Franchisor Defendants and Franchisee Defendant.

II.     **The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem.**

25.     The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what G6 Defendants knew or should have known regarding the trafficking at their hotel properties, including the trafficking of Jane Doe (K.R.D.).

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

5

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

26.    Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[3] For years, sex traffickers have "been able to reap enormous profits with little risk when attempting to operate within hotels."[4] In 2014, 92 percent of calls to the Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[5] Hotels have been found to account for over 90 percent of commercial exploitation of children.[6]

27.    Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.[7]

28.    Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others,

---

[3] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id*

[4] *See Human Trafficking in the Hotel Industry*, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/.

[5] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015), available at: https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf

[6] Erika R. George & Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking in Modern Slavery*, 46 N.Y.U. J. INT'L L. & POL. 55, 92 (2013).

[7] *See, e.g.*, Department of Homeland Security, *Blue Campaign Toolkit*, available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, available at: https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human Trafficking Red Flags, available at: https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

have established recommended policies and procedures for recognizing the signs of sex trafficking.[8]

29.    Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

    a.    Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

    b.    Individuals show signs of physical abuse, restraint, and/or confinement;

    c.    Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

    d.    Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    e.    Individuals lack freedom of movement or are constantly monitored;

    f.    Individuals avoid eye contact and interaction with others;

    g.    Individuals have no control over or possession of money or ID;

    h.    Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

    i.    Individuals have few or no personal items—such as no luggage or other bags;

    j.    Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

    k.    A group of girls appears to be traveling with an older female or male;

---

[8] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023);National Center for Missing and Exploited Children,

https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

 l. A group of males or females with identical tattoos in similar locations.  This may indicate "branding" by a trafficker;

 m. Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

 n. Possession of bulk sexual paraphernalia such as condoms or lubricant;

 o. Possession or use of multiple cell phones; and

 p. Possession or use of large amounts of cash or pre-paid cards.[9]

30. The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff. Tool kits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex trafficking.[10]  From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

31. The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.[11] It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

32. The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants

---

[9] *Id.*

[10] Department of Homeland Security, *Blue Campaign Toolkit*, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

[11] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[12]

33.    All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

34.    The most effective weapon against sexual exploitation and human trafficking is education and training.[13]  As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[14]

35.    This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[15]  In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

36.    Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating

---

[12] *Id.*

[13] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

[14] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023).  *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

[15] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

revenue from traffickers without taking necessary steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

37.     Each of the G6 Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

38.     Unfortunately for Jane Doe (K.R.D.), the promises made by the G6 Defendants have proven empty. Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (K.R.D.).

**III.    Sex Trafficking Has Long Been Prevalent at Hilton Branded Properties, and Defendants Have Known About It.**

39.     Defendants' actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Each of the Defendants has known, since well before Jane Doe (K.R.D.)'s trafficking, that sex trafficking was ongoing and widespread at Hilton branded properties including the subject properties named herein.

**a.  Sex Trafficking at Hilton Branded Hotels was well Known by Defendants**

40.     Upon information and belief, at all relevant times the Hilton Defendants have, acting directly and through affiliates, adopted a centralized approach to exercising control over Hilton branded properties, including the Tapestry Collection properties, which includes the Avatar Hotel. This extends to the hotels' approach to human trafficking. For example, Hilton publishes a single human rights policy that covers all brands, annually prepares a single corporate responsibility report addressing human rights issues, and tracks markers related to its human trafficking response across all brands under the Hilton umbrella. This has also included maintaining centralized policies on detecting and response to trafficking, exercising centralized control over training related to sex trafficking, and adopting centralized practices for reporting of suspected trafficking both internally and to law enforcement.

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

41. Sex trafficking was prevalent at Hilton branded properties, including Tapestry Collection properties, which includes the Avatar Hotel, on a national scale.

42. Public statements confirm that the Defendants were aware of the issue of sex trafficking in Hilton branded properties:

a. As early as 2010, Chinese police found a brothel operating inside a Hilton branded hotel, which prompted Hilton Worldwide officials to publicly claim to be working on a code of conduct to prevent child sex trafficking at their branded properties. [16]

b. Hilton Worldwide, on behalf of its brands including Embassy Suites, joined the ECPAT-USA Code in 2011, acknowledging its duties to prevent and protect children from trafficking after over a year of advocacy directed at Hilton branded properties from anti-trafficking advocates.[17]

c. Speaking on behalf of its brands, including Embassy Suites, Hilton Worldwide stated in 2013: "Sex trafficking and sexual tourism is a large and growing problem worldwide, and Hilton Worldwide must never allow any of its properties, products, or services to be used in any manner that supports or enables any form of abuse and exploitation."[18]

d. In 2015, Hilton Worldwide conducted a global human rights assessment for all its branded properties, including Embassy Suites, that identified the following risk: hotels may be used by criminals to traffic victims for exploitation.[19]

43. Public information, including scores of news stories and online reviews, confirms both the widespread sex trafficking problem at Hilton branded hotels and the Defendants' knowledge of this sex trafficking. Upon information and belief, the Defendants monitored both news stories and online reviews for indicia of criminal activity, including sex trafficking.

44. Examples of notable press involving the frequent use of Hilton branded hotels for illegal activity, including sex trafficking, include:

[16] https://www.nasdaq.com/articles/hilton-working-abolish-child-sex-trafficking-2010-11-03
[17] https://stopchildlabor.org/hilton-signs-code-of-conduct-to-prevent-child-prostitution/
[18] https://thecode.my.salesforce-sites.com/apex/publicPdf?id=0019000000GxgQIAAZ&year=2013
[19] https://esg.hilton.com/wp-content/uploads/sites/3/2022/08/Hilton-FY-2021-Modern-Slavery-Act-Statement-1.pdf

11

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

a.  In 2011, a man was convicted of sex trafficking a minor at a Hilton branded hotel in Minnesota.[20]

b.  In 2011, a prostitute was raped when two men forced their way into her room at a Hilton branded property in New Hampshire.

c.  In 2012, a man was charged with sex trafficking at another Hilton branded hotel in Minnesota.[21]

d.  In 2012, a couple was charged with sex trafficking an 18-year-old girl with Autism Spectrum Disorder at a Hilton branded property.[22]

e.  In 2012, a man was charged with forced labor and sex trafficking following a sting at a Hilton branded hotel in California.[23]

f.  In 2012, arrests were made after police conducted a prostitution sting operation at a Hilton branded property in Memphis.[24]

g.  In 2013, an arrest was made in a prostitution sting at an Embassy Suites hotel in California.[25]

h.  In 2016, a man was arrested at an Embassy Suites hotel in California on charges of attempted commercial sexual abuse of a minor.[26]

i.  In 2017, a man was arrest for promoting prostitution at an Embassy Suites hotel in North Carolina.[27]

45.     These articles are just examples. There are many similar articles about sex trafficking and other associated criminal activity at Hilton branded hotels.

---

[20] https://www.startribune.com/28-years-for-man-who-used-girl-for-prostitution/118163089/

[21] https://www.startribune.com/fridley-man-st-paul-woman-accused-of-prostituting-iowa-teen/138615249/

[22] https://www.twincities.com/2012/02/01/couple-charged-with-prostituting-runaway-iowa-girl-with-asperger-syndrome/

[23] https://www.nbclosangeles.com/news/local/long-beach-roshaun-kevin-nakia-porter-accused-human-trafficking-orange-county-pimp/1951757/

[24] https://www.actionnews5.com/story/20142585/suspected-prostitutes-busted-at-beale-area-hotel/

[25] https://www.latimes.com/socal/glendale-news-press/news/tn-gnp-woman-arrested-at-glendale-hotel-in-prostitution-sting-20130703-story.html

[26] https://sfist.com/2016/12/28/facebook-owned_oculus_engineer_bust/

[27] https://www.fayobserver.com/story/news/crime/2017/02/06/woman-taken-to-embassy-suites/22086683007/

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

46.    Examples of online reviews confirming the widespread presence of sex trafficking, prostitution, and related criminal activity at Hilton branded hotels, include:

a.    A 2009 review of a Hilton branded property in New York noted that the hotel bar was used by prostitutes to pick up guests, that this could be spotted from a mile off, and that the hotel staff allowed it.[28]

b.    A 2010 reviewer corroborated earlier reviews about prostitutes using the hotel bar at a New York Hilton hotel to pick up johns and said that hotel staff did not seem to care.[29]

c.    A 2011 reviewer noted that prostitutes were permitted to engage in obvious solicitation activities at a New York Hilton branded hotel and noted that the activity was so obvious that the hotel must turn a blind eye to it.[30]

d.    A 2012 review of a Hilton property in California stated "need i mention the prostitutes there on a daily basis. do not waste your money."[31]

e.    A 2013 review from a Hilton property in New York stated that prostitution activity in the hotel bar was so obvious that the hotel "must endorse it."[32]

f.    A 2013 review of an Embassy Suites in Silicon Valley noted that rates for commercial sex were being negotiated publicly in the hotel.[33]

g.    A 2013 review of a Hilton property in California noted that a" hooker and her "John" were having an audible conversation in a public area of the hotel.[34]

---

[28] https://www.tripadvisor.com/Hotel_Review-Hilton0763-d93618-Reviews-Waldorf_Astoria_New_York-New_York_City_New_York.html

[29] https://www.tripadvisor.com/Hotel_Review-Hilton0763-d93618-Reviews-Waldorf_Astoria_New_York-New_York_City_New_York.html

[30] https://www.tripadvisor.com/Hotel_Review-Hilton0763-d93618-Reviews-Waldorf_Astoria_New_York-New_York_City_New_York.html

[31] https://www.yelp.com/biz/doubletree-by-hilton-hotel-san-jose-san-jose?adjust_creative=mapquest&start=40&utm_campaign=yelp_feed&utm_medium=feed_v2&utm_source=mapquest

[32] https://www.tripadvisor.com/Hotel_Review-Hilton0763-d93618-Reviews-Waldorf_Astoria_New_York-New_York_City_New_York.html

[33] https://www.tripadvisor.com/Hotel_Review-g32717-d78235-Reviews-Embassy_Suites_by_Hilton_Milpitas_Silicon_Valley-Milpitas_California.html

[34] https://www.yelp.com/biz/hilton-sacramento-arden-west-sacramento?start=180

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

h. A 2014 review of a Hilton property in Illinois stated "now it seems that the clientele there is mainly hookers and people who are partying."[35]

i. A 2015 review of an Embassy Suites in Silicon Valley reported that police on the premises had arrested several prostitutes and were looking for the pimp who had been circling them in the parking lot.[36]

j. A 2019 review from a Hilton property in Westbury, New York reported that it seemed "like a prostitute hotel" and there was obvious prostitution activity occurring in the adjacent room throughout the night.[37]

47. These reviews are just examples. There are many similar reviews for Hilton branded hotels.

48. This sampling of news stories, reviews, and other public and non-public sources of information establishes that sex trafficking was widespread at Hilton branded properties and that the Defendants knew or should have known that:

a. There was widespread and ongoing sex trafficking occurring at their branded properties.

b. Sex trafficking was a brand-wide problem for Hilton originating from corporate level decisions.

c. Sex trafficking was a concern at their hotels.

d. Hilton brand franchisees and hotel staff were not taking reasonable steps to deter, detect, and disrupt known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking at the branded hotel properties.

e. The Hilton Defendant's efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective.

f. The Hilton Defendant and Franchisee Defendant were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

---

[35] https://www.yelp.com/biz/hampton-inn-chicago-midway-airport-bedford-park
[36] https://www.yelp.com/biz/embassy-suites-by-hilton-milpitas-silicon-valley-milpitas
[37] https://www.yelp.com/biz/hilton-garden-inn-westbury-westbury

14

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

49.    Despite the continually mounting evidence that sex trafficking at its properties was ongoing and growing, Defendants continued to earn revenue through conduct that they knew or should have known would continue to facilitate that trafficking.

**b. Defendants had actual and constructive knowledge of widespread and ongoing sex trafficking at the Avatar Hotel.**

50.    The Hilton Defendants and Franchisee Defendant knew or should have known that sex trafficking was widespread and ongoing at the Avatar Hotel. Upon information and belief, traffickers, including Jane Doe (K.R.D.)'s trafficker, repeatedly chose to use the Avatar Hotel, such that there was a population of traffickers who operated at this hotel. They selected this hotel because of policies and practices that created a favorable environment for trafficking and because hotel staff turned a blind eye to signs of trafficking. There were obvious and apparent signs of this widespread trafficking activity, consistent with the well-known "red flags" of sex trafficking in the hospitality industry, that the ES Defendants knew or should have known about.

51.    Based upon information and belief, the traffickers, including Jane Doe (K.R.D.)'s trafficker, operated at the Avatar Hotel with little regard for concealment, due to an implicit understanding between the hotel staff of the Avatar Hotel and the traffickers. This understanding enabled the traffickers to operate efficiently, as they had found a venue where they could conduct their operations without disruption from Defendants.

52.    Upon information and belief, and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims exploited at the Avatar Hotel, by multiple traffickers, who exhibited "red flags" of sex trafficking, that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, refusing room cleaning services, and other signs consistent with the "red flags" of trafficking identified above.

53.    Upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of the victims, as well as the nature of

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

the victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation.

54.   All knowledge from the hotel staff at the Avatar Hotel is imputed to the Franchisee Defendant. The Franchisee Defendant knew about this widespread and ongoing trafficking at the Avatar Hotel, including the trafficking of Jane Doe (K.R.D.), through the direct observations of hotel staff, including management-level staff, and information otherwise communicated to the staff by other staff members, guests, and other sources.

55.   Upon information and belief, in addition to available public sources of information about trafficking, the Franchisee Defendant knew or should have known about the widespread trafficking at the Avatar Hotel based on non-public sources of information including but not limited to:

a.   Direct observation of hotel staff and management;

b.   Surveillance of the property;

c.   Customer complaints;

d.   Monitoring of online reviews and other customer feedback;

e.   Information received from law enforcement; and

f.   Other sources of non-public information available to the Franchisee Defendant.

56.   Upon information and belief, in addition to public sources of information about trafficking, the Hilton Defendants knew or should have known about the widespread trafficking at Tapestry Collection properties, including the Avatar Hotel, based on non-public sources of information including but not limited to:

a.   The obligation of hotel staff and hotel management to report suspected trafficking activity to the Hilton Defendants;

b.   The Hilton Defendants' practice of monitoring patterns in reports of criminal activity (including trafficking) and assessing areas and properties at elevated risk;

c.   The Hilton Defendants' regular monitoring of online reviews;

d.   The Hilton Defendants' collection and monitoring of customer surveys and complaints;

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

e. The Hilton Defendants' regular inspections of the hotel property;

f. The Hilton Defendants' collection and review of surveillance of the hotel property;

g. Information obtained by "field-based associates" employed by the Hilton Defendants that visited hotels to discuss human trafficking issues;

h. Information provided to the Hilton Defendant by law enforcement; and

i. Other sources of non-public information available to the Hilton Defendants.

57. Upon information and belief, the Hilton Defendants adopted a protocol that facially required hotel staff and franchisees to report suspected criminal activity, including sex trafficking to the Hilton Defendants. Based on the existence of this protocol and the widespread and obvious trafficking at the Avatar Hotel, there were multiple instances of suspected sex trafficking that the Franchisee Defendant and their hotel staff and management were required to, and upon information and belief did report such trafficking to the Hilton Defendants.

58. Despite their knowledge, Defendants continued for years to facilitate human sex trafficking and other related illegal activity in its hotels that was obvious even to its customers.

59. Defendants had constructive knowledge of the widespread and ongoing trafficking at the Avatar Hotel because this trafficking resulted from their failure to exercise ordinary care operating the hotel.

**c. Defendants knew Jane Doe (K.R.D.) was being trafficked at these subject Avatar Hotel because of the apparent and obvious "red flags" of sex trafficking.**

60. During the period that Jane Doe (K.R.D.) was trafficked at Avatar Hotel, there were obvious signs, observed by hotel staff, that her trafficker was engaged in sex trafficking:

a. The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards;

b. Other girls were trafficked at the same hotel at the same time as Jane Doe (K.R.D.);

c. Even though Jane Doe (K.R.D.) and her traffickers would stay for multiple days at a time, housekeeping was kept away by using the "Do Not Disturb" door hanger;

d. Housekeeping staff was prevented from entering the room for regular cleaning, towel exchange and other standard room services;

17

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

e. The traffickers were often present with Jane Doe (K.R.D.) at check in and would linger around the hotel or in the parking lot while she was with a john;

f. There was heavy foot traffic in and out of Jane Doe (K.R.D.)'s room involving men who were not hotel guests;

g. Jane Doe (K.R.D.) had at least ten (10) johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and

h. Other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known "red flags" for trafficking in a hotel.

61. Upon information and belief, multiple employees at the Avatar Hotel, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment. Based on this and on the other methods listed above, that they used to monitor and supervise the Avatar Hotel, the Franchisee Defendant knew or were willfully blind to the fact that Jane Doe (K.R.D.) was being trafficked at the Avatar Hotel.

62. Given these obvious signs, the Hilton Defendants knew or should have known about the trafficking of Jane Doe (K.R.D.) based on their policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking to the Hilton Defendants.

63. The Hilton Defendants also knew or should have known about Jane Doe (K.R.D.)'s trafficking based on the other methods, listed above, that they used to monitor and supervise the Avatar Hotel.

64. Defendants had constructive knowledge of the trafficking of Jane Doe (K.R.D.) at the Avatar Hotel because her trafficking was the direct result of each Defendants' facilitation of trafficking at that hotel. Had they acted with ordinary diligence, they would have been aware of this trafficking and that they were benefiting from such trafficking.

///

///

///

///

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

**IV.    Defendants actively facilitated sex trafficking at the Avatar Hotel, including the trafficking of Jane Doe (K.R.D.).**

65.    Defendants had both actual and constructive knowledge of the trafficking of Jane Doe (K.R.D.) at the Avatar Hotel because the trafficking was the direct result of Defendants facilitating her trafficking at the Avatar Hotel.

**a.    Franchisee Defendant facilitated the trafficking of Jane Doe (K.R.D.).**

66.    The Franchisee Defendant was responsible for the acts, omissions, and knowledge of all employees of the Avatar Hotel when operating the hotel because these acts and omissions were committed in the scope and course of employment, they ratified these acts and omissions, and because they failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to them, of sex trafficking occurring at this hotel.

67.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Avatar Hotel, the Franchisee Defendant continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

68.    The Franchisee Defendant knew or were willfully blind to the fact that Jane Doe (K.R.D.) was being trafficked and, despite this, benefited from continued association with her trafficker by providing a venue and tools, in the form of hotel rooms and related services, to harbor and maintain Jane Doe (K.R.D.) and to facilitate her sexual exploitation.

69.    The Franchisee Defendant also facilitated widespread trafficking at the Avatar Hotel, including the trafficking of Jane Doe (K.R.D.), in ways including:

a.    Failing to adequately enforce  policies, procedures and practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to on-premises crime and specifically human trafficking;

b.    choosing not to report known or suspected criminal activity including sex trafficking to law enforcement;

c.    implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

activities but, instead, could operate without concern for detection or interference by the hotel staff.

70.    Through these actions, the Franchisee Defendant formed a continuous business relationship with traffickers and encouraged them to return to the Avatar Hotel to exploit victims including Jane Doe (K.R.D.).

**a.  The Hilton Defendants facilitated the trafficking of Jane Doe (K.R.D.).**

71.    Hilton Defendants are responsible for the acts, omissions, and knowledge of all employees of the Avatar Hotel when operating the hotel because these acts and omissions were committed in the course and scope of employment, because Hilton Defendants ratified these acts and omissions, and because Hilton Defendants failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to Hilton Defendants, of sex trafficking occurring at Hilton branded locations including the subject location.

72.    On information and belief, the Hilton Defendants directly participated in renting rooms to traffickers at the Avatar Hotel, including to Jane Doe (K.R.D.)'s traffickers, in ways including, but not limited to, the following:

   a.  The Hilton Defendants controlled all details of the guest reservation, check-in, and payment processes through both its management and control over all systems used for those processes and its adoption of detailed and specific policies governing the means and methods hotel staff used for each of these processes.

   b.  The Hilton Defendants directly made reservations for rooms at the Avatar Hotel and accepted payment for those rooms through a central reservation system that it controlled and operated, and which franchisee was required to use. The Hilton Defendants could reserve rooms and accept payments without requiring franchisee approval or involvement.

   c.  The Hilton Defendants controlled extension of existing room reservations and guests had to contact the Hilton Defendants to extend reservations.

   d.  The Hilton Defendants controlled the payment methods that would be accepted and had access to information about which guests used which payment methods through

20

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

its backend access to the reservation and payment systems they required their franchisee to use.

e.  The Hilton Defendants controlled policies and protocols for guest identity verification at the time of check in.

f.  The Hilton Defendants controlled room rates, required discounts, mandatory fees, and rewards programs.

g.  The Hilton Defendants controlled and restricted the ability of hotel staff to refuse or cancel a reservation.

h.  The Hilton Defendants collected, retained, monitored, and analyzed detailed data about every guest who stayed at the Avatar Hotel, including the following categories of information: name, contact information (mailing address, email address, phone number), nationality, date of birth, gender, payment card information, Hilton Honors number, passport information, preferred language, room preference, room selection and assignment, arrival time, additional guest names, corporate travel planner contact information (name, title, company, business phone, email and address), corporate number and name, travel agent number and name, airline partner number and name, vehicle information, images or footage captured by closed circuit television (CCTV), internet or other electronic network activity information, including information regarding a customer's interaction with Hilton websites, applications, or advertisements, IP addresses, Session IDs, Booking engine, Whether a customer has a Hilton and American Express co-branded credit card, whether a customer's Hilton and Amazon accounts are linked, whether a customer's Hilton and Lyft accounts are linked, geolocation information, device information, social media information, demographics data, a customer's usability preferences regarding Hilton's website (such as a customer's email preferences, MyWay preferences, and opt-out preferences), description of a complaint that a customer makes to Hilton, including

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

21

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

a customer's free form textual feedback if the customer is a Hilton Honors member, customer ratings and survey responses, and free form textual feedback.[38]

    i.   The Hilton Defendants established detailed policies and protocol that dictated, step-by-step, everything that would happen from the time a guest arrived at the Avatar Hotel until they entered their guest room. This included operational directives regarding payment methods, identification requirements, the number of guests that could be in each room and whether information needed to be collected for each guest, what questions hotel staff should and should not ask, and other matters related to check-in.

    j.   The Hilton Defendants required franchisee to use their property management system, which was owned, maintained, controlled, and operated by the Hilton Defendants, for virtually all aspects of hotel operations regarding room reservations and payment.

73.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Avatar Hotel, Hilton Defendants continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

74.    Hilton Defendants knew or were willfully blind to the fact that Jane Doe (K.R.D.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate Jane Doe (K.R.D.)'s sexual exploitation.

75.    Hilton Defendants also facilitated widespread trafficking at the Avatar Hotel, including the trafficking of Jane Doe (K.R.D.), in ways including:

    a.   allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

    b.   inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

---

[38] https://www.hilton.com/en/p/global-privacy-statement/

22

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

c.  choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures; and

d.  implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

76.  Upon information and belief, the Hilton Defendants participated directly in aspects of the operation of the Avatar Hotel that influenced whether and to what extent trafficking occurred at the hotel, including, but not limited to, the following:

a.  The Hilton Defendants retained control over and responsibility for training related to detecting and responding to human trafficking at the Avatar Hotel. The Hilton Defendants retained controlled over whether training was provided, when it was provided, who provided it, how it was provided, the content of the training, and how effectiveness of the training was assessed. Hilton Worldwide tracks training on human trafficking issues at all its branded properties, including Avatar Hotel.[39]

b.  The Hilton Defendants retained control over and responsibility for setting, supervising, overseeing, and enforcing all policies and protocols regarding detecting and responding to human trafficking at the Avatar Hotel. Hilton Worldwide has multiple corporate-level teams that are charged with implementing, overseeing and assessing these policies, protocols, and practices at branded hotels.

c.  The Hilton Defendants required hotel staff members to report suspected trafficking to the Hilton Hotline or an incident alert mobile application.

d.  The Hilton Defendants retained control over use of brand-wide data analytics to assess and address human trafficking at Avatar Hotels.

[39] https://esg.hilton.com/our-reporting/

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

e.  The Hilton Defendants, through the Hilton Worldwide Global Compliance team, retained control over monitoring the volume of reports of suspected trafficking overall and at specific properties and responding appropriately.

f.  The Hilton Defendants retained control over supervision and management of the response to suspicions of human trafficking at the hotel level by assigning the Hilton Worldwide Global Compliance team to review all hotline reports and the response to each report.

g.  The Hilton Defendants assumed the responsibility to identify geographic locations and specific hotel properties that had a heightened risk of human trafficking and to enact appropriate measures to respond to properties with higher risk.

h.  The Hilton Defendants assumed the responsibility to alert specific hotels, including the Avatar Hotel, of circumstances, prompting a high risk for trafficking activity.

i.  The Hilton Defendants assumed responsibility for guest safety by collecting and maintaining and images or footage from closed circuit television (CCTV) at hotel properties[40]

j.  The Hilton Defendants maintained control over all details of the terms under which franchised hotels, including the Avatar Hotel, offered internet services to customers, including dictating the software, hardware, and service provider to be used, setting all policies about use and restrictions on use, and actively collecting and monitoring guest internet usage data. The Hilton Defendants controlled whether certain sites known to be frequently used to advertise victims for trafficking would be blocked from the hotel's network.

k.  The Hilton Defendants retained control over the setting, supervision, overseeing, and enforcement of detailed policies and protocol for housekeeping services at the Avatar Hotel, including policies for how often rooms must be entered, how to respond to

---

[40] https://www.hilton.com/en/p/global-privacy-statement/#CollectionGenerally

24

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services.

l.   The Hilton Defendants collected, maintained, and analyzed detailed data regarding housekeeping services at the Avatar Hotel including trends that would reveal patterns consistent with human trafficking.

77.   Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Avatar Hotel named herein, Hilton Defendants continued renting rooms to traffickers, including the rooms used to sexually exploit victims, including Jane Doe (K.R.D.).

78.   Hilton Defendants knew or should have known that Jane Doe (K.R.D.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them hotel rooms and related services to facilitate Jane Doe (K.R.D.)'s sexual exploitation.

79.   Upon information and belief, despite having actual or constructive knowledge of the ongoing sex trafficking at the Avatar Hotel, the Hilton Defendants continued participating in a venture at that hotel, with their franchisee and the hotel staff, in a way that the Hilton Defendants knew or should have known would lead to additional sex trafficking at the hotel, including but not limited to by the following:

a.   While the Hilton Defendants publicly committed to the EPCAT Code in 2011, they unreasonably delayed and failed to take any significant steps to implement that commitment for several years.[41]

b.   The Hilton Defendants adopted inappropriate and inadequate practices for selecting, training, supervising, managing, and disciplining franchisees and front-line hotel staff regarding issues related to human trafficking.

c.   The Hilton Defendants delayed implementation of anti-trafficking training. While Hilton Worldwide committed to the EPCAT Code in 2011, it had completed no

---

[41] https://thecode.my.salesforce-sites.com/apex/publicPdf?id=0019000000GxgQIAAZ&year=2012;
https://thecode.my.salesforce-sites.com/apex/publicPdf?id=0019000000GxgQIAAZ&year=2013

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

training in 2011 and 2012 and had only trained 879 individuals, across all its brands, by the time of its 2013 report.[42]

d. The Hilton Defendants implicitly condoned and endorsed its franchisee's repeated decisions not to respond to suspected trafficking and other related criminal activity appropriately.

e. The Hilton Defendants ignored policies that they had purportedly enacted and implemented.

f. The Hilton Defendants continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking at the Avatar Hotel.

g. Despite having specific knowledge of policies that would significantly reduce sex trafficking at the Avatar Hotel, the Hilton Defendants declined to implement policies that would likely have the effect of reducing its sex-trafficking related profits or draw negative public attention by acknowledging the ongoing sex trafficking at Hilton Branded properties.

h. The Hilton Defendants attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal.

i. The Hilton Defendants allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability.

j. The Hilton Defendants adopted and required their franchisee to adopt check in procedures that failed to ensure all hotel guests were appropriately identified and, instead, allowed guests to use the hotel with minimal risk of traceability.

k. The Hilton Defendants continued to allow the Avatar Hotel to profit by using brand trademarks despite actual or constructive knowledge of ongoing sex trafficking in that hotel. Lending the perceived legitimacy of the Hilton Brand affirmatively

---

[42] https://thecode.my.salesforce-sites.com/apex/publicPdf?id=0019000000GxgQIAAZ&year=2013

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

facilitated sex trafficking by providing a venue where sex trafficking could occur with minimal risk of detection by law enforcement or traceability.

l.   The Hilton Defendants provided traffickers with access to internet services that Hilton knew or should have known would be used to facilitate trafficking by promoting commercial sex services online.

80.    If the Hilton Defendants had exercised reasonable diligence when operating the Avatar Hotel and in the areas over which they retained control, then the Hilton Defendants would have prevented the Avatar Hotel from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Jane Doe (K.R.D.). Instead, the Hilton Defendants engaged conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of Jane Doe (K.R.D.).

81.    The Hilton Defendants should have known about Jane Doe (K.R.D.).'s trafficking because it retained control over the training of the staff of the Avatar Hotel regarding human trafficking and ways to detect and respond to signs of human trafficking. Effective training and education are the most important tools to prevent use of hotel facilities for sexual exploitation and human trafficking. If the Hilton Defendants had exercised reasonable diligence in providing training to hotel staff, it would have known about the obvious and apparent sex trafficking, including the trafficking of Jane Doe (K.R.D.). Thus, under §1595(a), constructive knowledge of that trafficking is imputed to the Hilton Defendants.

82.    The Hilton Defendants should have known about Jane Doe (K.R.D.)'s trafficking because it also retained control over the response of Avatar Hotel to human trafficking, including development of policies and procedure regarding detection, disruption of and response to human trafficking. By failing to exercise reasonable diligence in discharge of this duty, the Hilton Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe (K.R.D.) in their hotel. Thus, under §1595(a), constructive knowledge of that trafficking is imputed to the Hilton Defendants.

83.    The Hilton Defendants also should have known about Jane Doe (K.R.D.)'s trafficking because the Hilton Defendants retained the control to adopt and enforce policies on this

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

subject for its properties, including the Avatar Hotel, but failed to adopt and adequately enforce appropriate check-in, payment, and identification policies, which facilitated trafficking at the Avatar Hotel and allowed traffickers to access rooms for the purpose of harboring their victims, including Jane Doe (K.R.D.). Thus, under §1595(a), constructive knowledge of that trafficking is imputed to the Hilton Defendants.

84.    The Hilton Defendants also should have known about Jane Doe (K.R.D.)'s trafficking because it retained control over the security of the Avatar Hotel through various means including, upon information and belief, placing and monitoring security cameras, accepting and reviewing and responding to customer complaints, and inspecting the Avatar Hotel. They also collected data regarding hotel operations and customers, including names, payment information, payment method, reservation history, wi-fi browsing data, and other details associated with their stay. If the Hilton Defendants had used reasonable prudence in monitoring and reviewing this information, it would have known about the ongoing trafficking. Thus, under §1595(a) constructive knowledge of that trafficking is imputed to the Hilton Defendants.

85.    Jane Doe (K.R.D.) exhibited the kind of obvious signs of sex trafficking that would have been detectable and detected if the Hilton Defendants had used reasonable diligence in the aspects of hotel operations over which it retained control.

86.    Moreover, Jane Doe (K.R.D.)'s trafficker was able to operate without interference and without making significant effort at a concealment because the Hilton Defendants adopted policies and practices that insulated Jane Doe (K.R.D.)'s trafficker from significant risk of detection or disruption.

**V.    Defendants' Ventures at the Avatar Hotel.**

87.    Through the conduct described above, Hilton and Franchisee Defendants knowingly benefited from engaging in a venture with sex traffickers at the subject Avatar Hotel named herein, including Jane Doe (K.R.D.)'s traffickers, as follows:

      a.    Hilton and Franchisee Defendants both received benefits, including increased revenue, every time a room was rented at the Avatar Hotel;

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

b. This venture engaged in violations of 18 U.S.C. §1591 through the actions of the criminal traffickers at the Avatar Hotel locations, which Hilton and Franchisee Defendants knew or should have known about;

c. Hilton and Franchisee Defendants associated with traffickers, including Jane Doe (K.R.D.)'s traffickers, by acting jointly to continue to rent rooms to these traffickers despite having actual or constructive knowledge of their sex trafficking activity;

d. Hilton and Franchisee Defendants had a mutually beneficial relationship with the traffickers at the Avatar Hotel locations, fueled by sexual exploitation of victims, including Jane Doe (K.R.D.);

e. Sex traffickers, including Jane Doe (K.R.D.)'s traffickers, frequently used the Avatar Hotel locations for their trafficking because of an implicit understanding that the Avatar Hotel locations were an avenue that would facilitate their trafficking, providing minimal interference and lowering their risk of detection. This understanding occurred because of the conduct of Hilton and Franchisee Defendants facilitating that trafficking as described throughout this Complaint. This resulted in benefits, including increased revenue, for Hilton and Franchisee Defendants;

f. Both Hilton and Franchisee Defendants participated in this venture through the conduct described throughout Plaintiff's Original Complaint, as they were jointly responsible for relevant aspects of hotel operations; and

g. Jane Doe (K.R.D.)'s trafficking at the subject Avatar Hotel locations was a result of Hilton and Franchisee Defendants' participation in a venture with criminal traffickers. If Hilton and Franchisee Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe (K.R.D.)'s trafficking at the subject Avatar Hotel locations.

88. Through the conduct described above, Hilton also knowingly benefited from engaging in a commercial venture with Franchisee Defendants operating the Avatar Hotel locations as follows:

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

29

a. Hilton associated with Franchisee Defendants to operate the Avatar Hotel locations;

b. Pursuant to the terms of the franchising agreement, both Hilton and Franchisee Defendants received financial benefits from operating the Avatar Hotel, including revenue generated specifically by renting rooms to traffickers. They engaged in revenue sharing and had a common incentive to maximize revenue;

c. By participating in a venture that facilitated sex trafficking, each Hilton and Franchisees also benefitted by keeping operating costs low, maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade and by not acknowledging the pervasive nature of sex trafficking in their hotels generally and the subject Avatar Hotel locations specifically;

d. This venture violated 18 U.S.C. §§ 1591(a) and 1595(a) through the conduct of Franchisee Defendants and the widespread sex trafficking at the subject Avatar Hotel locations named herein;

e. Despite its actual or constructive knowledge that the venture was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), Hilton participated in the venture by continuing to associate with Franchisee Defendants to operate the Avatar Hotel locations named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. §1591(a), including trafficking of victims like Jane Doe (K.R.D.); and

f. Jane Doe (K.R.D.)'s trafficking at the Avatar Hotel locations named herein was a result of Hilton's and Franchisee Defendants' facilitation of the widespread and ongoing violations of 18 U.S.C. §§ 1591(a) and 1595(a) at the Avatar Hotel locations. Had Hilton not continued participating in a venture that it knew or should have known was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), it would not have received a benefit from Jane Doe (K.R.D.)'s trafficking at the subject Avatar Hotel location named herein.

///

///

30

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

## VI. Franchisee Defendant and Staff at the Avatar Hotel Acted as Actual Agents of the Hilton Defendants.

89. The Hilton Defendants subjected Franchisee to detailed standards and requirements regarding the operation of the Avatar Hotel through the franchising agreement, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations imposed by the Hilton Defendants. The Hilton Defendants obscure the full extent of control they exercise over the franchisee by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. These written standards, protocols, and requirements:

a. Did not merely identify quality or outcome standards, but instead specifically controlled the means, methods, and tools franchisee used at the Avatar Hotel, such as providing hotel staff with step-by-step on how to perform tasks at the hotel and mandating that Franchisee use computer systems and software selected, owned and controlled by the Hilton Defendants;

b. Covered virtually all aspects of hotel operations, including internal operating functions;

c. Dictated the specific way franchisee and hotel staff must carry out most day-to-day functions at the Avatar Hotel; and

d. Significantly exceeded what was necessary for the Hilton Defendants to protect its registered trademarks.

90. In addition to the ways described above, upon information and belief, the Hilton Defendants exercised and reserved the right to exercise systemic and pervasive control over day-to-day operation of the Avatar Hotel in ways including but not limited to the following:

a. The Hilton Defendants required their franchisee and management of the Avatar Hotel to participate in mandatory training programs, both during onboarding and on an annual basis, regarding all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary to protect brand trademarks.

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

31

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

b. The Hilton Defendants retained the right to mandate and control training for hotel staff and actually maintained and controlled training for hotel staff on topics it selected. The Hilton Defendants required onsite and online training for all hotel staff, including mandatory training for all hotel-based employees at the time of hire and ongoing training as dictated by the Hilton Defendants.

c. The Hilton Defendants controlled the details of training conducted for hotel staff by franchisee by requiring the use of standardized training methods and materials.

d. The Hilton Defendants set required staffing levels for the Avatar Hotel.

e. The Hilton Defendants adopted detailed job descriptions for each position at the Avatar Hotel and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so.

f. The Hilton Defendants exercised control over the hiring process for hotel staff by mandating interview techniques, setting hiring criteria, and controlling requirements for background and reference check.

g. The Hilton Defendants retained the right to approve or reject hiring of the general manager of the hotel.

h. The Hilton Defendants imposed and enforced detailed requirements for all aspects of hotel facilities.

i. The Hilton Defendants required that their franchisee use Hilton's preferred vendors to purchase goods necessary for day-to-day operation of the hotel.

j. The Hilton Defendants entered into exclusive purchasing agreements with vendors, including through the Primary Supplier Distribution Program, and required franchisees to purchase goods and supplies from a single source selected by the Hilton Defendants. The Hilton Defendants did not do this solely to assure uniformity of brand but, instead, did this for their own financial benefit as they routinely received rebates from vendors selected through these purchasing agreements.

k. The Hilton Defendants required franchisees to participate in a guaranteed rate program through which their franchisee must pay rate difference and pay for gift

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

cards issued to guests if the guests find a room at the hotel at a rate lower than offered through a central reservation system.

l.  The Hilton Defendants controlled channels for guests to report complaints or provide feedback about the Avatar Hotel.

m.  The Hilton Defendants required franchisees to participate in a Guest Assistance Program and retained the right to require franchisee to take specific actions to resolve guest complaints, including providing rebates and cash refunds.

n.  The Hilton Defendants required their franchisee to use systems the Hilton Defendants owned, operated, and controlled for, among other things, revenue management, hotel operations, and business intelligence gathering and analysis.

o.  The Hilton Defendants provided day-to-day services through the back-end operation of the property management system used for virtually all aspects of running the Avatar Hotel.

p.  The Hilton Defendants required their franchisee to use electronic mail systems maintained by Hilton Worldwide, which are maintained, controlled, and monitored by Hilton Worldwide.

q.  The Hilton Defendants were directly involved in installing hardware and software systems and providing day-to-day maintenance and repair of these systems at the Avatar Hotel.

r.  The Hilton Defendants required their franchisee to join and participate in a franchisee association with other branded hotels.

s.  The Hilton Defendants controlled all marketing for the Avatar Hotel. The Hilton Defendants exercised this control on a day-to-day basis by going beyond setting standards and, instead, requiring their franchisee to get prior approval of any marketing or advertising materials.

t.  The Hilton Defendants set detailed standards regarding the insurance franchisee was required to purchase and maintain, including requirements for specific provisions

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

that must be in the policy, who must be insured, in what amount, and what insurers the franchisee could use.

u. The Hilton Defendants imposed detailed recordkeeping and reporting requirements on franchisee LLC regarding virtually all aspects of hotel operation, including internal operations.

v. The Hilton Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

w. The Hilton Defendants retained the right to inspect the Avatar Hotel, including through unannounced inspections, and to perform audits. The Avatar Hotel exercised this control and inspected and audited virtually all aspects of hotel operations, including internal operations and issues related to guest safety.

x. The Hilton Defendants retained control to require their franchisee to make operational changes within a time established by the Hilton Defendants.

y. The Hilton Defendants monitored day-to-day operations of the Avatar Hotel through constant monitoring of guest surveys, online reviews, customer complaints, and data from the back-end of the systems it required their franchisee to use.

z. The Hilton Defendants retained the right to impose penalties and ultimately to terminate the franchise agreement if their franchisee violated standards, rules, regulations, or expectations.

91. The Hilton Defendants are also vicariously liable because it retained and exercised control over the specific instrumentalities and aspects of operations that caused Jane Doe (K.R.D.)'s harm, including but not limited to reservations of rooms, hotel security, and detection of and response to suspected sex trafficking. The Hilton Defendants had the right to exercise detailed, day-to-day control over and involvement in these areas. It also regularly and closely monitored these areas.

**VII.    Defendants are Jointly and Severally Liable for Jane Doe (K.R.D.)'s Damages.**

92. The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Jane Doe (K.R.D.).

34

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

93. Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe (K.R.D.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

### CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

94. Jane Doe (K.R.D.)  incorporates all previous allegations.

I.   **Count 1: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a).**

95. Jane Doe (K.R.D.) is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

96. Both Hilton and Franchisee Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because the Hilton and Franchisee Defendants:

a. violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, it harbored individuals (including Jane Doe (K.R.D.) knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

b. violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.

97. Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Amended Petition, to cause Jane Doe (K.R.D.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

II.   **Count 2: Beneficiary Liability under §1595 (a) of the TVPRA.**

98. Jane Doe (K.R.D.) is a victim of sex trafficking within the meaning of 18 U.S.C §1591 and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

35

§1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

99.    Through acts and omissions described throughout this Complaint, each of the Franchisor Defendants and the Franchisee Defendant received a financial benefit from participating in a venture with traffickers, including Jane Doe (K.R.D.)'s traffickers, despite the fact that each defendant knew or should have known that these traffickers, including Jane Doe (K.R.D.)'s traffickers, were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2). Thus, each of the Franchisor Defendants and the Franchisee Defendant is liable as a beneficiary under 18 U.S.C §1595(a).

100.    Through the acts and omissions described throughout this Complaint, each of the Franchisor Defendants received a financial benefit from participating in a venture with its respective franchisee regarding the operation of its respective hotel property despite the fact that each Franchisor Defendant knew or should have known that this venture was violating 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2).

101.    Violations of 18 U.S.C §1595(a) by each of the Franchisor Defendants and Franchisee Defendant as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (K.R.D.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel property.

**III.    Count 3: Vicarious Liability for TVPRA Violations.**

102.    Franchisee Defendant acted as the actual agent of its respective Franchisor Defendant when operating its respective hotel property.

103.    Each of the Franchisor Defendants exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisee to operate its respective hotel property.

104.    Under the TVPRA and the federal common law, a principal is vicariously liable for the violations of its actual agent and its subagents.

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

105.    Each of the Franchisor Defendants is vicariously liable for the TVPRA violations of its franchisee and the subagents of that franchisee.

106.    As alleged above, Franchisee Defendant Skyline Avatar House, LP is directly liable to Jane Doe (K.R.D.) for violations of the TVPRA, both as a perpetrator under 18 U.S.C §1591(a) and as a beneficiary under 18 U.S.C §1595(a). Franchisor Defendants are also directly liable to Jane Doe (K.R.D.) under § 2255. Franchisor Defendants are vicariously liable to Jane Doe (K.R.D.) for those same violations.

**IV.    Count 4: Hilton's Vicarious Liability for Franchisee's Violations of the TVPRA as Joint Employer of the Staff at the subject Avatar Hotel.**

107.    At all relevant times, Hilton Defendants and Franchisee Defendant were joint employers of the staff of the subject Avatar Hotel because they exercised joint control over the terms and conditions of employment, and economic realities reflect joint employment.

108.    Under the TVPRA and the federal common law, Hilton Defendants, as a joint employer of the staff of the subject Avatar Hotel, is vicariously liable for the acts and omissions of the staff of the subject Avatar Hotel.

109.    As alleged above, the staff of the subject Avatar Hotel engaged in conduct that violated 18 U.S.C §1591(a) and §1595(a). Hilton Defendants are vicariously liable for these TVPRA violations.

**DAMAGES**

110.    Defendants' acts and omissions, individually and collectively, caused Jane Doe (K.R.D.) to sustain legal damages.

111.    Hilton and Franchisee Defendants are joint and severally liable for all past and future damages sustained by Jane Doe (K.R.D.).

112.    Jane Doe (K.R.D.) is entitled to be compensated for personal injuries and economic damages, including:

   a.    Actual damages (until trial and in the future);

   b.    Incidental and consequential damages (until trial and in the future);

   c.    Mental anguish and emotional distress damages (until trial and in the future);

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

d.  Lost earnings and lost earning capacity (until trial and in the future);

e.  Necessary medical expenses (until trial and in the future);

f.  Life care expenses (until trial and in the future);

g.  Physical pain and suffering (until trial and in the future);

h.  Physical impairment (until trial and in the future);

i.  Exemplary/Punitive damages;

j.  Attorneys' fees;

k.  Costs of this action;

l.  Pre-judgment and all other interest recoverable; and

m.  For such other and further relief as the Court may deem just and proper.

## **RELIEF SOUGHT**

113.    WHEREFORE, Jane Doe (K.R.D.) prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Jane Doe (K.R.D.) against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Jane Doe (K.R.D.) may, in law or in equity, show herself to be justly entitled.

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

Dated: June 10, 2024                    Respectfully submitted,

/s/ Brian J. Perkins
Brian J. Perkins
CA State Bar No. 315870
PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 766-3544
Email: bperkis@peifferwolf.com

Annie McAdams, *pro hac vice*
ANNIE MCADAMS PC
2900 North Loop West, Suite 1130
Houston, Texas  77092
Telephone:  (713) 785-6262
annie@mcadamspc.com

Bryan O. Blevins, *pro hac vice*
PROVOST UMPHREY LAW FIRM
350 Pine Street, Ste., 1100
Beaumont, TX 77701
Phone: (409) 835-6000
bblevins@pulf.com

David E. Harris, *pro hac vice*
Preston Burns
CA State Bar No. 300358
SICO HOELSCHER HARRIS, LLP
819 N. Upper Broadway
Corpus Christi, Texas  78401
Telephone:  (361) 653-3300
dharris@shhlaw.com
pburns@shhlaw.com

Attorneys for Plaintiff

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

39
PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

## **DEMAND FOR JURY TRIAL**

PLAINTIFF Jane Doe (K.R.D.) hereby demands a trial by jury as to all claims and issues in this action that are so triable.

Dated:  June 10, 2024                               Respectfully submitted,

                                                    /s/ Brian J. Perkins
                                                    Brian J. Perkins
                                                    CA State Bar No. 315870
                                                    PEIFFER WOLF CARR KANE CONWAY & WISE
                                                    555 Montgomery Street, Suite 820
                                                    San Francisco, California 94111
                                                    Telephone: (415) 766-3544
                                                    Email: bperkis@peifferwolf.com

                                                    Annie McAdams, *pro hac vice*
                                                    ANNIE MCADAMS PC
                                                    2900 North Loop West, Suite 1130
                                                    Houston, Texas  77092
                                                    Telephone:  (713) 785-6262
                                                    annie@mcadamspc.com

                                                    Bryan O. Blevins, *pro hac vice*
                                                    PROVOST UMPHREY LAW FIRM
                                                    350 Pine Street, Ste., 1100
                                                    Beaumont, TX 77701
                                                    Phone: (409) 835-6000
                                                    bblevins@pulf.com

                                                    David E. Harris, *pro hac vice*
                                                    Preston Burns
                                                    CA State Bar No. 300358
                                                    SICO HOELSCHER HARRIS, LLP
                                                    819 N. Upper Broadway
                                                    Corpus Christi, Texas  78401
                                                    Telephone:  (361) 653-3300
                                                    dharris@shhlaw.com
                                                    pburns@shhlaw.com

                                                    Attorneys for Plaintiff

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL